John J. Kane (TX Bar No. 24066794)
**KANE RUSSELL COLEMAN LOGAN PC**
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299

***Counsel for HNGH Turtle Creek, LLC***

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 21-31954-SWE-11** |
| | § | |
| **2999TC ACQUISITIONS, LLC,** | § | **CHAPTER 11** |
| | § | |
| **DEBTOR.** | § | |
| | § | |

**HNGH TURTLE CREEK, LLC'S REPLY IN SUPPORT OF ITS MOTION TO ENFORCE AGREED ORDERS**

[Relates to Dkt. No. 134]

HNGH Turtle Creek, LLC ("**HNGH**") files this *Reply* (the "**Reply**") to the Debtor's *Second Supplemental Response in Opposition to Motion to Enforce Agreed Orders* (the "**Response**") [Dkt. No. 189] to HNGH's *Motion to Enforce Agreed Orders* (the "**Motion**"). In doing so, HNGH seeks address the Debtor's arguments in its Response, and to address the Debtor's efforts to re-frame the ongoing hearing on the Motion as some violation of Bankruptcy Rule 7001. In support of the Motion and this Reply, HNGH respectfully states as follows:

## THE DEBTOR'S FAULTY ARGUMENTS

1. The Debtor's Response can be broken down into four discrete arguments. First, the Debtor argues that the Court cannot determine that HNGH is the owner of the Property via the Deed-in-Lieu because doing so would require an adversary proceeding pursuant to Bankruptcy Rule

7001(1) and (9).

2. Second, the Debtor argues that the Court cannot rule that the Debtor has no right, title, or interest in the Property, nor any lien, claim, encumbrance, or cloud on title against the property without an adversary proceeding pursuant to Bankruptcy Rule 7001(1), (2), and (9).

3. Third, the Debtor argues that the Court cannot force the Debtor to remove the *lis pendens* the Debtor filed against the property when it commenced its adversary proceeding against HNGH in November, 2021, because doing so would constitute affirmative injunctive relief which the Debtor argues cannot be granted outside of an adversary proceeding pursuant to Bankruptcy Rule 7001(7).

4. Fourth, the Debtor argues that the Court certainly cannot grant such relief on an emergency basis, because no facts supporting an emergency hearing "are presented." HNGH addresses each of the Debtor's patently erroneous arguments below.

## **REPLY**

### A. THE COURT ALREADY ORDERED IN AN ADVERSARY PROCEEDING THAT THE DEED-IN-LIEU IS VALID AND ENFORCEABLE IN FAVOR OF HNGH

5. The Debtor's first argument is set forth in paragraph 4 of its Response, in which the Debtor claims this Court cannot determine that HNGH is the owner of the Property via the Deed-in-Lieu without an adversary proceeding. *Response*, ¶ 4. The Debtor argues that doing so would require an adversary proceeding, as set forth in Bankruptcy Rule 7001(1) and (9). Bankruptcy Rule 7001 identifies matters that are adversary proceedings. The Debtor correctly notes that under subsection (1), a proceeding to recover property is an adversary proceeding. Bankruptcy Rule 7001(1). A proceeding to determine the validity or extent of an interest in property is similarly an adversary proceeding under subsection (2). *Id.* at 7001(2). Likewise, a proceeding to obtain a declaratory judgment may also require an adversary proceeding under subsection (9). *Id.* at 7001(9).

6. What the Debtor fails to disclose to this Court is that such an adversary proceeding

has already been adjudicated to a final judgment in this case. On November 11, 2021, the Debtor filed a complaint (the "**Complaint**") to avoid the Deed-in-Lieu and recover title to the property in the name of the Debtor, commencing adversary proceeding number 21-03085 before this very court (the "**Adversary Proceeding**"). In its Complaint, the Debtor sought to avoid the Deed-in-Lieu filing and recording under sections 547 and 548 of the Bankruptcy Code, and sought to recover title to the Property under section 550 of the Bankruptcy Code. *Complaint*, ¶¶ 28-46, Claims I-III.

7. After four months of litigation in the Adversary Proceeding, the Court entered its *Agreed Order of Judgment and Dismissal of Adversary Proceeding with Prejudice to Refiling* (the "**Adversary Order**") [Adv. Dkt. No. 15]. To be very clear, the Debtor, Timothy Barton, and all parties that Timothy Barton could legally bind by his execution at the time, agreed to the findings of facts and conclusions of law in the Court's Adversary Order. *See Adversary Order*, decretive ¶ 2 and signature blocks.

8. The Court's agreed findings of fact included the following:

> (ii) that the Debtor defaulted on its payment obligations under the Note by failing to pay all amounts due and owing by 1:00 pm ET on the maturity date, October 29, 2021; (iii) that following the Debtor's default, HNGH properly exercised its right to file the Deed in Lieu in accordance with the terms and conditions of the Forbearance Agreement; (iv) that HNGH caused the Deed in Lieu to be ***filed*** with the Dallas County Clerk before the Debtor commenced its Bankruptcy Case; (v) that the Debtor argues that the Deed in Lieu was not ***recorded*** in the Dallas County Real Property Records by the Dallas County Clerk until November 1, 2021 and so was unperfected as of the Petition Date; (vi) that the Debtor has not yet paid the Payoff Amount but has agreed to the dismissal with prejudice of the adversary proceeding, and that Timothy Barton and the Parties have agreed to the terms and conditions of this Adversary Order;

*Adversary Order*, finding of fact ¶ 2. Importantly, this Court already ruled that HNGH properly exercised its right to file the Deed-in-Lieu, which is now recorded in the Dallas Country Real Property Records.

9. Further, the Adversary Order determined that "all claims and causes of action asserted by Plaintiff in the Complaint are unmeritorious and are denied in their entirety and DISMISSED

WITH PREJUDICE TO REFILING." *Adversary Order*, decretive ¶ 1. Accordingly, this Court has already ruled, in an adversary proceeding, that the Deed-in-Lieu was properly filed, and that it is not subject to avoidance, and that the Property is not subject to recovery by the Debtor.

10. Note that by agreement of the parties, all of the Debtor's claims and causes of action asserted in the Complaint were expressly adjudicated on the merits, and that the Adversary Order was the result of litigation to a final judgment. *Adversary Order*, decretive ¶ 4. The Debtor, Barton, and HNGH all agreed and this Court ruled that the Adversary Order "shall have res judicata and collateral estoppel effect, and shall be binding on each of the Plaintiff, Timothy Barton, and Defendants." *Id.*

11. As a result, the *only* way that the Debtor could obtain title to the Property under the Adversary Order was by satisfying the Payoff Amount by the Payoff Deadline. *Adversary Order*, finding of fact ¶ 2(vii). The Debtor and HNGH both have stipulated to the Court to date that *no such payoff occurred*. Accordingly, by the express terms of this Court's pre-existing Adversary Order, to which the Debtor and Mr. Barton *agreed*, the Debtor has no further right to avoid or even contest the Deed-in-Lieu, and has no right to recover title the Property. Therefore, in satisfaction of the Debtor's first argument, an adversary proceeding to determine ownership of the Property has already taken place in accordance with Bankruptcy Rules 7001(1), (2), and (9). The Debtor is bound by that Adversary Order, and this Court has statutory authority under section 105(a) to enforce its own orders.

## B. THE DEBTOR VOLUNTARILY WAIVED AND RELEASED ALL CLAIMS AGAINST THE PROPERTY AND THE COURT CAN ENFORCE THE DEBTOR'S WAIVER AND RELEASE

12. The Debtor's second argument, that the Court cannot rule that the Debtor has no right, title, or interest in the Property, nor any lien, claim, encumbrance, or cloud on title against the property without an adversary proceeding pursuant to Bankruptcy Rule 7001(1), (2), and (9), similarly ignores the existence of the Adversary Order, a stipulation, and the terms of yet another *agreed* order.

13. First, in the Adversary Order, the Debtor, Barton, and entities Barton could legally bind (the "**Barton Parties**"), all agreed to—and by entry of the Adversary Order this Court ruled that

they have—"release[d] and expressly waive[d] all claims and causes of action against Defendants…arising out of or that could arise out of or otherwise relate to any factual allegations set forth by Plaintiff in the Complaint, any other facts related to the Loan Documents or interactions of the Parties…." *Adversary Order*, decretive ¶ 2. As the Complaint included factual allegations directly related to the Debtor's maturity date default and the validity of HNGH's filing and recording of the Deed-in-Lieu, all such claims are forever barred, released, and waived.

14. Second, the Debtor, Barton, and the Barton Parties materially expanded their waivers and releases, as shown in their *Joint Stipulation and Agreed Order Modifying Order on Motion to Dismiss and for Relief From Stay* (the "**Stipulation**") [Dkt. No. 91]. The Stipulation itself makes clear just what the Agreed Order at Docket No. 64 (the "**Agreed Order**") was supposed to do: "The Agreed Order…provides the Debtor with an opportunity to *salvage ownership of the Property*…if it can satisfy the Payoff Amount by the Payoff Deadline." *Stipulation*, ¶ 2 (emphasis added). If the Debtor failed to satisfy the Payoff Amount by the Payoff Deadline, it would have no right, title, or interest in the Property. *See Id.* at ¶ 1.

15. Given the litigious nature of the Debtor and Mr. Barton, HNGH required that the Debtor, Mr. Barton, and the Barton Parties waive all claims and causes of action in any way related to, among other things, the Property and what was defined as the Loan Documents. *Id.* at 11. As evidenced in the Stipulation, the Debtor, Mr. Barton, and the Barton Parties did, in fact, agree to waive and release all such claims. *Id.*

16. The breadth of those waivers and releases is of critical importance to the hearing on the Motion and the arguments set forth in the Debtor's Response. In the Stipulation, the Debtor, Barton, and the Barton Parties agreed to and did:

> release and waive all claims and causes of action against [the HNGH Parties], whether known or unknown, in any possible way related to the Property, the Loan Documents, or any other corresponding matter, now or in the future.

*Stipulation*, ¶ 11. Through that voluntary and express waiver and release provision, the Debtor, Barton, and the Barton Parties gave up any claim they may have to the Property adverse to HNGH, and any dispute they may have regarding the Loan Documents.

17. On March 17, 2022, The Court approved the Stipulation by entering its *Agreed Order Modifying Order on Motion to Dismiss and for Relief from Stay* (the "**Modifying Order**") [Dkt. No. 94]. The Modifying Order also amended and modified the Agreed Order previously entered on December 10, 2021. The Debtor, Barton, and Barton Parties' expansive waivers are further enumerated in the Modifying Order. *Modifying Order*, decretive ¶ 6. In decretive paragraph 6 of the Modifying Order, this Court "ORDERED, ADJUDGED AND DECREED" that the Debtor, Barton, and Barton Parties each:

> release and waive all claims and causes of action against [the HNGH Parties], whether known or unknown, in any possible way related to the Property, the Loan Documents, or any other corresponding matter, now or in the future.

*Id.* Those release include all claims that were known or unknown at that time, and that had arisen, or could have arisen even in the future. As Mr. Nambiar testified at the hearing on the Motion, this waiver and release provision was a critical bargained-for term of the Stipulation and Modifying Order, and was intended to prevent the Debtor, Barton, and Barton Parties from asserting claims against the HNGH Parties and the Property should the Debtor default on its payment obligations under the Modifying Order.

18. As noted above, there is no dispute between HNGH and the Debtor that the Debtor did not satisfy the Payoff Amount on the Payoff Deadline. At the hearing, Debtor's counsel, Ms. Lindauer, even questioned the need for the hearing on the Motion, noting that the Agreed Order and Modifying Orders were self-executing. While HNGH agrees that the orders are self-executing and that HNGH owns the Property, it is the Debtor's willingness to ignore that the Adversary Order, and the waivers and releases in the Stipulation and Modifying Order exist that gives rise to HNGH's need

for this Court's enforcement of its own pre-existing orders.

19. To more directly address the Debtor's second argument, no adversary proceeding is required to rule that the Debtor has no right, title, or interest in the Property, nor any lien, claim, encumbrance, or cloud on title against the property, because the Debtor has already waived and released all such claims and encumbrances in this Court's *pre-existing agreed orders*. The Court need only enforce its prior orders and hold the Debtor to its own agreements.

### C. THE COURT CAN FORCE THE DEBTOR TO REMOVE THE LIS PENDENS BECAUSE THE ADVERSARY PROCEEDING WAS ADJUDICATED TO AN AGREED JUDGMENT AGAINST THE DEBTOR, DISMISSING ALL CLAIMS WITH PREJUDICE TO REFILING

20. Third, the Debtor argues that the Court cannot force the Debtor to remove the *lis pendens* the Debtor filed against the property when it commenced its adversary proceeding against HNGH in November, 2021, because doing so would constitute affirmative injunctive relief which the Debtor argues cannot be granted outside of an adversary proceeding pursuant to Bankruptcy Rule 7001(7). This argument is befuddling. The Debtor's *lis pendens* provided notice of the Debtor's filing of its Adversary Proceeding seeking to avoid the Deed-in-Lieu and recover title to the Property. That dispute was resolved to finality *in the Adversary Proceeding* by the *agreed Adversary Order*.

21. Thus, while the Debtor may be correct that an adversary proceeding was required to resolve the *lis pendens*, that adversary proceeding has already taken place. As the Debtor is undoubtedly aware, the Adversary Proceeding was resolved by the Adversary Order in favor of HNGH. The Debtor and Mr. Barton even signed off on the terms of the Adversary Order, as evidenced on the very document. The Debtor's Adversary Proceeding is over and all of the Debtor's claims were dismissed with prejudice to refiling. Again, should this Court grant the Motion and require the Debtor to release its *lis pendens*, it would simply be enforcing its Adversary Order, to which the *Debtor agreed*. This is yet another example of the Debtor refusing to acknowledge the existence of this Court's Orders. This type of argument is precisely *why* HNGH seeks this Court's intervention; the Debtor

has a long pattern of behavior of ignoring orders, agreements, waivers, and releases when they no longer suit the Debtor.

## D. THE COURT ALREADY DENIED THE DEBTOR'S MOTION FOR A CONTINUANCE, AND THE DEBTOR AGREED TO AN EXPEDITED SETTING ON HNGH'S MOTION

22. Finally, HNGH strongly opposes the Debtor's request for a further continuance of the hearing on the Motion. First, as Ms. Lindauer admitted on the record and in correspondence with the Court, the Debtor agreed to the June 10 setting on HNGH's Motion. Second, the Court already denied the Debtor's request for a continuance orally on the record, and by entry of its *Order Denying Reorganized Debtor's Motion to Continue Evidentiary Hearing on HNGH Turtle Creek's Motion to Enforce Agreed Orders* [Dkt. No. 194]. The Response was filed after the Court had already orally denied the Debtor's first written motion for continuance [Dkt. No. 158]. Again, evidence that the Debtor has little intention of abiding by the Court's rulings. Given that this issue has already been decided by the Court once, HNGH requests that the Court again deny the Debtor's request for a further continuance. The hearing on the Motion began on June 10, 2022 and has been proceeding intermittently for 20 days to date, with two additional days of settings on the Court's docket. HNGH closed its case in chief on the first day of the hearing. There is no cause for further delay.

23. Further, the Debtor mischaracterizes Mr. Nambiar's testimony in its Response. Mr. Nambiar had not yet concluded his testimony, and the Debtor provided this Court with only a portion of his explanation of damages incurred by HNGH as a result of the Debtor's litigation posturing and a need to enforce this Court's prior orders against the Debtor. As Mr. Nambiar has now seemingly concluded his testimony on the need for this hearing on an expedited basis and damages incurred by HNGH as a result of the Debtor's litigiousness and lack of compliance with Court orders, HNGH will not belabor the point further in this pleading.

## E. LEGAL AUTHORITY – THIS COURT CAN UNEQUIVOCALLY ENFORCE ITS OWN ORDERS

24. Section 105(a) of the Bankruptcy Code makes clear that a court may take any action

or make any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. *See* 11 U.S.C. § 105(a). Courts therefore have express statutory authority to take actions and issue orders necessary to enforce their pre-existing rulings, including the issuance of sanctions and ability to hold parties in contempt of court. *See Burd v. Walters (In re Walters)*, 868 F.2d 665, 669 (4th Cir. 1989); *In re Rimsat, Ltd.*, 212 F.3d 1039, 1048-49 (7th Cir. 2000) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)).

25. Contrary to the Debtor's arguments, courts may even use 105(a) to grant a claim for fees and costs against a counterparty to a motion in a contested matter if that counterparty violated the court's pre-existing orders. *See, e.g., In re Berry*, 582 B.R. 886, 892-93 (Bankr. D. S.C. 2018) (applying 105(a) to grant claim for fees and costs against counterparty to motion in contested matter for violations of plan and confirmation order); and *In re Direct Media Power, Inc.*, 582 B.R. 739, 750 (Bankr. N.D. Ill. 2018) (applying 105(a) to mandate party's compliance with prior cash collateral order).

26. As held by the United States Supreme Court, section 105(a) of the Bankruptcy Code grants broad authority "to bankruptcy judges to take any action that is necessary or appropriate to prevent an abuse of process…" and grants bankruptcy courts broad authority to sanction abusive litigation practices. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375-376 (2007). As addressed by the Eleventh Circuit Court of Appeals, the broad authority granted to bankruptcy courts under section 105(a) may allow them to grant monetary or injunctive relief "necessary or appropriate" to carry out the Bankruptcy Code, to enforce or implement court orders or rules, or to prevent an abuse of process. *See Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1554 (11th Cir. 1996). As a result, courts may, for example, order sanctions on a motion showing a party's willful violation of the automatic stay, even despite Bankruptcy Rule 7001(1) purportedly requiring an adversary proceeding for an action to recover money. *See Id.*

27. While HNGH recognizes that the Court's statutory power is not unlimited,[1] all of the relief requested in the Motion is tied directly to the Debtor's entry into *agreed orders* and a stipulation entered in this bankruptcy case and in the Adversary Proceeding. This Court may interpret and enforce its own orders, especially those to which the Debtor has agreed, and has the inherent and statutory power to hold parties in contempt of court for their violation of this Court's prior orders.

**WHEREFORE**, HNGH requests that the Court enter an order granting the Motion and the relief requested therein.

DATED: June 29, 2022

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

By: */s/ John J. Kane*
John J. Kane (TX Bar No. 24066794)
Bank of America Plaza
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299
E-mail: jkane@krcl.com

***Counsel to HNGH Turtle Creek, LLC***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 29, a true and correct copy of the foregoing document was filed with the Court and served via the Court's electronic case filing system (ECF) upon all parties receiving such electronic service in this proceeding.

*/s/ John J. Kane*
John J. Kane

[1] *See, e.g., In re Waco Town Square Partners, LP*, 536 B.R. 756 (S.D. Tex. 2015) (citing case authority on limits of 105(a) and vacating on jurisdictional basis J. Isgur order dismissing purely non-derivative claims of non-debtor party against other non-debtor party in state court lawsuit).